1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

| | |
|---|---|
| HERBERT E. TOWNSEND, | CASE NO. 2:17-cv-01322-LK |
| Plaintiff, | ORDER DENYING MOTION FOR ATTORNEY FEES |
| v. | |
| BROOKS SPORTS, INC., | |
| Defendant. | |

11
12
13
14
15
16

Plaintiff Herbert Townsend sued Brooks Sports, Inc. in the Middle District of Florida for infringement of claim 1 of U.S. Patent No. 7,490,416 (the "'416 Patent"). Brooks Sports countersued for a declaratory judgment of non-infringement and invalidity. After the case was transferred to this district, Brooks Sports successfully petitioned the Patent Trial and Appeal Board (the "PTAB") for *inter partes* review of claim 1. The Court accordingly stayed these proceedings pending the PTAB's decision. The PTAB ultimately found claim 1 unpatentable, and the Federal Circuit summarily affirmed that decision. The parties then returned to this Court, agreed to lift the stay, and stipulated to dismissal of Townsend's infringement claim with prejudice and Brooks Sports' counterclaim without prejudice.

1    Brooks Sports now moves for over $1 million in attorney fees under Section 285 of the

2    Patent Act. Dkt. No. 127. It contends that Townsend failed to conduct a reasonable pre-suit

3    investigation and litigated this case in an unreasonable manner. The Court disagrees. Because this

4    case does not as a whole stand out from the mine-run infringement suit, the Court denies Brooks

5    Sports' motion.[1]

## I.    BACKGROUND

The origins of this lawsuit stretch back roughly seven years. The Court surveys early
communications between the parties and summarizes the procedural history of this case to
contextualize its discussion of Townsend's pre-suit investigation and litigation conduct.

### A.    Townsend and the '416 Patent

Townsend owns the '416 Patent. Dkt. No. 1 at 2. Issued in February 2009 by the United
States Patent and Trademark Office, the '416 Patent is titled "Shoe with Cushioning and Speed
Enhancement Midsole Components and Method for Construction Thereof." *Id.*; *see* Dkt. No. 15-
1 (the '416 Patent); U.S. Patent No. 7,490,416 (filed Nov. 23, 2004) (issued Feb. 17, 2009). The
patent abstract indicates that the protected invention is a running shoe with "improved cushioning
and energy returning properties that vary depending upon the speed of the runner due to
incorporation of at least one insert containing dilatant compound encapsulated in a shell and set
into the midsole of the running shoe[.]" Dkt. No. 15-1 at 1; *see also id.* at 8, col. 3 l. 10–12 ("[T]he
present invention describes an improved running shoe having a midsole with a modulus of
elasticity and yield point that increase at higher running speeds."). Although the '416 Patent
consists of eleven claims, only claim 1 is relevant here. Claim 1 is as follows:

> 1. A shoe to be worn on a foot, said shoe comprising a midsole having a top surface,
> said shoe midsole fabricated from material having a fixed elastic modulus and

---

[1] Because the Court can decide the matter based on the parties' filings, it denies Brooks Sports' request for oral argument.

ORDER DENYING MOTION FOR ATTORNEY FEES - 2

having at least one cavity formed in said top surface below the bottom of the foot, said at least one cavity filled with material consisting essentially of a dilatant compound, all of which material consisting essentially of a dilatant compound is retained below the bottom of the foot.

*Id.* at 10, col. 8 l. 27–35. The '416 Patent further specifies that, "[f]or purposes of this invention, a dilatant compound is a polymeric material that changes from soft and pliable under slow application of a load to elastic and bouncy under rapid application of a load." *Id.* at 7, col. 2 l. 39–42. Put differently, a dilatant compound is "a liquid with inverse thixotropy, that is, a viscous liquid suspension that temporarily solidifies under applied pressure." *Id.* at 7, col. 2 l. 45–47. It is "derived from a mixture of dimethyl siloxane, hydroxy-terminated polymers with boric acid, Thixotrol ST® brand organic rheological additive manufactured by Elementis Specialties, Inc., polydimethy[l]siloxane, decamethyl cyclopentasiloxane, glycerin, and titanium dioxide." *Id.* at 8, col. 4 l. 16–21.

## B. Brooks Sports and the '885 Patent

Brooks Sports is a Washington corporation that "makes, imports, sells and/or offers for sale running shoes that include a material in the midsole to provide cushioning." Dkt. No. 1 at 3. It is the owner by assignment of U.S. Patent No. 8,209,885 (the "'885 Patent"). *Id.* Issued in July 2012 by the United States Patent and Trademark Office, the '885 Patent is titled "Shoe Assembly with Non-Linear Viscous Liquid." *Id.*; *see* Dkt. No. 15-2 (the '885 Patent); U.S. Patent No. 8,209,885 (filed May 11, 2009) (issued Jul. 3, 2012). The abstract states that the protected invention consists of "a shoe and shoe sole assembly made of a non-linearly viscous, SEBS block copolymer-based material that becomes more resilient as more energy is applied." Dkt. No. 15-2 at 1. Other embodiments entail "non-linearly viscous, SEBS block copolymer-based material . . . mixed with at least one other polymer in a foam," where "[t]he midsole is formed with a heel impact region and a forefoot region made of the foam." *Id.* The '885 Patent recognizes

"previous attempts [to] place a bladder or insert in the sole containing air, gel, plastic, or other material to absorb impact," but dismisses those materials as inadequate because they fail to provide the necessary "range of response characteristics to different levels of pressure and impact." *Id.* at 6, col. 1 l. 32–36. Indeed, the '885 Patent expressly refers to the shortcomings of dilatants:

> Some attempts have been made to provide a shoe with dilatant (i.e., shear-thickening) materials in the sole. These materials increase in viscosity as a function of the rate of shear (e.g., silly putty). Dilatant materials, however, are generally not accurately calibrated to the responsiveness required for multiple levels of activity to provide optimal responsiveness and comfort. Also, dilatant materials cannot be readily injection molded or compression molded, increasing the complexity and cost of manufacture.

*Id.* at 6, col. 1 l. 43–51.

Brooks Sports refers to the "adaptive cushioning" material protected under the '885 Patent as "Brooks DNA"—a product it describes in advertisements as "a highly viscous non-Newtonian material" that "adapts to the specific force you apply to it."  Dkt. No. 1 at 3. Brooks Sports has made, imported, and sold running shoes with midsoles made of Brooks DNA or "made of material in which Brooks DNA is blended with another material to provide Brooks DNA cushioning throughout the midsole." *Id.*

## C.    Townsend Accuses Brooks Sports of Infringing the '416 Patent: Early Communications

In February 2016, Townsend's counsel authored a letter to Brooks Sports' Chief Executive Officer and Director claiming that Brooks DNA "embodies technology that is disclosed and claimed by Mr. Townsend's 416 Patent." Dkt. No. 130-1 at 2. Counsel indicated that Townsend was "willing to consider granting Brooks rights under his 416 Patent," and requested a response setting forth Brooks Sports' "position on this patent and the relevance of this patent to Brooks shoes that include Brooks 'DNA' 'adaptive cushioning.'" *Id.* Brooks Sports' corporate counsel responded by email in April 2016. Dkt. No. 130-2 at 2. Corporate counsel indicated that Brooks

Sports had "confirmed that the Brooks DNA technology falls outside the claims of the '416 Townsend patent . . . because Brooks' DNA material is not a dilatant compound (a requirement of every claim of the Townsend patent)." *Id.* (asserting that Brooks DNA "is specifically a non-dilatant material that provides superior performance results"). According to corporate counsel, Brooks DNA technology is used "in a blended foam, as opposed to in a cavity; the cavity being a required element of the Townsend patent." *Id.* It was "[f]or at least these reasons" that Brooks Sports did not believe it needed a license to the '416 Patent. *Id.*

Nearly four months later, Townsend's counsel replied that he had "further examined Brooks DNA shoes" and had "a great deal of difficulty understanding Brooks' position that Brooks' DNA material is a 'non-dilatant material.'" Dkt. No. 130-3 at 2. Counsel conveyed his belief that this position was inconsistent "with Brooks' DNA shoes [and] Brooks' own statements about its DNA shoes." *Id.* Over the course of five pages, counsel explained in detail "dilatant behavior" in relation to the '416 Patent:

> [D]ilatant behavior refers to the resistance of certain fluids to shearing flow. . . . [T]he resistance of a Newtonian fluid to shearing flow is directly related to the speed of shearing and so is characterized by the straight line. A pseudo plastic behavior is characterized by less resistance when the speed of shearing is high and therefore . . . pseudo plastic resistance falls below the resistance of a Newtonian fluid for fast deforming. A dilatant material behaves oppositely from a pseudo plastic material. A dilatant material creates greater resistance to shearing at high speed and as shown, the resistance of a dilatant material is higher than a Newtonian fluid for fast deforming.

*Id.* Counsel emphasized that the increased resistance to shearing flow at increased flow speed "is specifically described by the Townsend '416 patent as characteristic of the dilatant compounds disclosed and described by that patent," and "is the basis of the invention disclosed and claimed by the Townsend '416 patent." *Id.* at 3; *see also* Dkt. No. 15-1 at 7, col. 2 l. 43–47 ("[A] dilatant compound is a polymeric material whose yield point and elastic modulus increase with increasing strain rate. In other words, it is a liquid with inverse thixotropy, that is, a viscous liquid suspension

that temporarily solidifies under applied pressure."); *id.* at 9, col. 5 l. 35–41 ("[U]nder slow application of force from the foot . . . , the dilatant compound deforms plastically . . . and transfers the foot's applied force to the surrounding midsole so that the dilatant and midsole together exhibit the low elastic modulus of the midsole material, thereby promoting cushioning and shock absorption."); *id.* at 9, col. 5 l. 41–45 ("Under fast application of force from the foot . . . , the dilatant compound will exhibit its inverse thixotropic properties and achieve a higher modulus of elasticity than the surrounding midsole[.]").

Townsend's counsel further observed that the Brooks DNA inserts described in the '885 Patent—i.e., those comprised of "non-linearly viscous, SEBS block copolymer-based material"—behave the same as the material described in the '416 Patent. Dkt. No. 130-3 at 4 ("The described behavior of this material is clearly dilatant behavior."). And Brooks Sports' advertisements about Brooks DNA shoes likewise "describe[d] the same response to different loading by a wearer." *Id.* at 5 (detailing advertisements). In closing, counsel requested a "more specific explanation" from Brooks Sports as to how its Brooks DNA material is not a dilatant given its "statements about that material and its behavior." *Id.* He also asked Brooks Sports to confirm whether the cushion material identified in the '885 Patent is in fact the Brooks DNA material. *Id.*

This time Brooks Sports turned to outside counsel. In an October 2016 response letter, outside counsel explained "why the nature of the DNA material itself is different than the material described in the [']416 patent." Dkt. No. 130-4 at 2. The Court need not summarize these arguments in detail. It suffices to note that outside counsel advanced four main contentions: (1) the "Current DNA"[2] does not infringe the '416 Patent "because it is blended foam in the entire

---

[2] Brooks Sports shoes incorporate Brooks DNA "in two ways." *Id.* In the "Current DNA" shoes, the DNA material "is blended with the foam forming the midsole[.]" *Id.* In earlier versions of the shoe—referred to as "Early DNA"—Brooks Sports incorporated into the midsole "molded inserts that included the DNA material[.]" *Id.*

midsole, as opposed to a cavity"; (2) neither the "Early DNA" nor the "Current DNA" is a dilatant compound because neither is a "viscous liquid suspension"; (3) neither the "Early DNA" nor the "Current DNA" is a dilatant compound because both contain "a number of additives"; and (4) the "Early DNA" does not infringe the '416 Patent "because it used air pockets and channels in the insert." *Id.* at 2–4.

Townsend's counsel replied with a series of questions about the composition of the "Current DNA" midsole and addressed each of the above contentions. Dkt. No. 130-5 at 3. As for the first, counsel indicated that he did not have enough information about the "Current DNA" midsole to respond to the argument and indicated his intent to address it more meaningfully should Brooks Sports "clarify the configuration of Brooks' Current DNA as requested[.]" *Id.* Counsel contested Brooks Sports' second argument by reiterating his view that the Brooks DNA material behaves in a materially identical manner to the material described in the '416 Patent. *Id.* ("Your letter does not dispute that this material described by the Brooks patents behaves as does the dilatant compound described by the Townsend patent."). According to counsel, Brooks Sports' position that the Brooks DNA material is a "gel"—rather than a "liquid"—was "wrong as a technical matter and also wrong as a matter of patent claim scope." *See id.* ("[D]ilatant behavior refers to the . . . rate of shear flow. That is the behavior of a liquid. The fact that the material appears to be a gel or a solid does not preclude this liquid behavior."). Counsel further noted that the '885 Patent is titled "Shoe Assembly with Non-Linear *Viscous Liquid*." *Id.* at 4 (internal quotations omitted and emphasis added).

As for Brooks Sports' third argument, counsel countered that the '416 Patent "makes clear that the dilatant compound may include additives." *Id.* ("The preferred embodiment identified at col. 4, lines 16 through 24, includes additives including a rheological additive and titanium dioxide which is a widely used pigment."). And because Brooks DNA consists essentially of a dilatant

compound, that it includes additives to "reduce shrinkage, improve bonding to midsole material, or color [the] material do[es] not place it outside the scope of the ['416 Patent]." *Id.* at 5. Counsel likewise rejected Brooks Sports' fourth and final contention that the '416 Patent excludes midsole inserts that have air pockets or voids. *Id.* As counsel explained, the '416 Patent's inclusion of a preferred embodiment of "at least one cavity" with dilatant material does not limit the patent to that single embodiment. *Id.* at 5–6 (citing to and quoting case law). Counsel concluded this final letter by urging Brooks Sports to clarify the configurations of the Brooks DNA shoes as well as "any matter that [Brooks Sports] believe[d Townsend] ha[d] misunderstood[.]" *Id.* at 6 ("[W]e do not accept Brooks' argument that the shoes your letter refers to as Early DNA shoes are outside the scope of the Townsend patent."). Brooks Sports never responded. Dkt. No. 129 at 7.

**D.    Townsend Files Suit: Venue Dispute and Transfer**

In February 2017, Townsend sued Brooks Sports in the United States District Court for the Middle District of Florida, alleging that Brooks DNA (as described in the '885 Patent) infringes claim 1 of the '416 Patent. Dkt. No. 1 at 4 (claiming that Brooks DNA "is a dilatant material as described by the [']416 patent" and that "Brooks DNA Insert Shoes contain, embody, and employ the invention described and claimed in the [']416 patent"). As relevant here, Townsend alleged that venue was proper in the Middle District of Florida "pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, upon information and belief, [Brooks Sports] ha[d] committed acts of infringement within th[at] judicial district and resides within th[at] judicial district as construed under applicable law." *Id.* at 2. He asserted that the Middle District of Florida had personal jurisdiction over Brooks Sports because it "conducts significant business in th[at] judicial district," is "registered with the Florida Department of State," and "directed efforts to sell products accused of infringement throughout the United States, including th[at] judicial district." *Id.* Finally, Townsend claimed that "a reasonable opportunity for discovery w[ould] show that [Brooks Sports] ha[d] offered its accused

products to distributors in th[at] judicial district and/or ha[d] committed acts of infringement within th[at] judicial district." *Id.*

Brooks Sports answered the complaint. Dkt. No. 26. It denied that venue was proper in the Middle District of Florida, asserted several affirmative defenses, and counterclaimed for a judicial declaration that (1) Brooks Sports has not infringed the '416 Patent and (2) the '416 Patent is invalid. *Id.* at 2, 4–7, 9.[3] In June 2017, Brooks Sports moved to dismiss for improper venue or, in the alternative, to transfer venue to the Western District of Washington pursuant to 28 U.S.C. §§ 1400(b), 1404(a), and 1406(a). Dkt. No. 38. It relied on the Supreme Court's May 2017 decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258 (2017) and argued that, for purposes of the patent venue statute, Brooks Sports neither "resides" in the Middle District of Florida nor maintains "a regular and established place of business" there. *Id.* at 7; *see* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."); *TC Heartland*, 581 U.S. at 270 (under Section 1400(b), a domestic corporation "resides" only in its state of incorporation).[4]

Townsend opposed the motion to transfer. Dkt. No. 40. He countered that Brooks Sports' "admissions and statements . . . establish[ed] a *prima facie* showing that [it] has a permanent and continuous presence in th[e Middle District of Florida] and therefore has a 'regular and established place of business' [there]." *Id.* at 5 (citing *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)). Put differently, Townsend maintained that venue was proper under the patent venue statute's

---

[3] Both Townsend's complaint and Brooks Sports' amended answer sought reasonable attorney fees pursuant to 35 U.S.C. § 285. Dkt. No. 1 at 5; Dkt. No. 26 at 10.

[4] Prior to *TC Heartland*, the Federal Circuit interpreted Section 1400(b) as incorporating Section 1391(c)'s general residency test, meaning that—for purposes of venue—domestic corporations "resided" in any judicial district in which they were subject to the court's personal jurisdiction. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990).

1    second basis. *Id.* at 8–11.[5] He also sought leave to conduct limited discovery "related to the

2    appropriateness of venue" in the Middle District of Florida based on Brooks Sports' contacts with

3    the district. Dkt. No. 41 at 1. Townsend asked the district court to hold in abeyance Brooks Sports'

4    motion to dismiss or transfer venue pending the results of discovery so that he could supplement

5    his briefing. *Id.*; *see* Dkt. No. 43 (Brooks Sports' opposition to motion for limited discovery).[6] The

6    Court denied the motion for three reasons. Dkt. No. 47. First, it noted that Townsend "had the

7    ability to seek discovery related to venue" since discovery opened in May 2017 but had elected

8    not to do so. *Id.* at 4. Second, the timing of Townsend's discovery motion was "curious" because

9    he filed it after responding to Brooks Sports' motion to dismiss or transfer venue. *Id.* The Court

10   was thus unwilling to delay resolution of the fully ripe motion to dismiss or transfer. *Id.* at 4–5.

11   And last, the Court found nothing in Townsend's motion indicating that it needed to consider

12   Brooks Sports' "contacts" with the Middle District of Florida to determine proper venue, or that

13   the record with respect to that issue was incomplete. *Id.* at 5.

14       The Court soon thereafter granted in part Brooks Sports' motion and transferred the action

15   to this Court. Dkt. Nos. 54–56; *see also* Dkt. No. 54 at 5 ("The motion is granted to the extent that

16   this matter is transferred to the Western District of Washington, and is otherwise DENIED as to

17   the request for dismissal." (bold emphasis omitted)). In the Court's view, the record demonstrated

18   "that Brooks resides (which is its state of incorporation per *TC Heartland*) and operates its business

19   in the Western District of Washington and China." *Id.* at 3 (bold emphasis omitted). The record

20

21   [5] Townsend also argued that transfer pursuant to Section 1404(a) was improper. *Id.* at 11–19. The Court, however,
     need focus only on Townsend's Section 1400(b) arguments, as those form the basis of Brooks Sports' claim that
22   Townsend unreasonably prolonged venue-related litigation.

     [6] Roughly two weeks after moving for leave to conduct limited discovery, Townsend filed a Rule 37 motion to compel
23   Brooks Sports to (1) answer his Interrogatory No. 1 and (2) produce documents responsive to his first Request for
     Production. Dkt. No. 42. This motion was fully briefed, *see* Dkt. Nos. 49–52, but it does not appear that the district
24   court ruled on or otherwise formally terminated the motion prior to transfer to the Western District of Washington.
     This Court never ruled on the motion either.

further indicated that Brooks Sports "has no U.S. facilities outside the Western District of Washington, and all of its activities relat[ed to] the accused DNA shoes are located in Washington." *Id.* at 3–4. The Court also rejected Townsend's suggestion that the presence of two Brooks Sports employees and one independent contractor in the Middle District of Florida provided prima facie evidence that venue was proper there. *Id.* at 4. In sum, the Court found it "clear" from the record that Brooks Sports "has no regular and established place of business" in the Middle District of Florida, and that the alleged acts of infringement occurred at Brooks Sports' headquarters in either Washington or China. *Id.*[7]

## E.    Proceedings in the Western District of Washington

In the parties' October 2017 Joint Status Report, Brooks Sports indicated its intent to move for a stay pending the PTAB's *inter partes* review of the '416 Patent. Dkt. No. 67 at 2; *see also id.* at 4 ("Brooks believes that the most efficient way to promptly resolve this dispute is through the IPR proceeding assessing the validity of the asserted '416 patent."). Townsend believed that a stay was inappropriate. He insisted that federal court was the most efficient way to resolve this case. *Id.* at 4. Also pertinent here is the parties' representation that they had "agree[d] to adopt an ESI Agreement based on this District's ESI Model Agreement, as modified by the parties[.]" *Id.* at 3; *see also id.* at 4 ("The parties will prepare a proposed Agreement Regarding Discovery of Electronically Stored Information for the Court's consideration."). The parties, however, never stipulated to entry of the ESI Model Agreement.

Brooks Sports moved to stay this case in early March 2018. Dkt. No. 76. Meanwhile, Townsend filed two Rule 37 motions to compel. Dkt. Nos. 72, 79. The first sought documents related to (1) Brooks Sports' late-2009 purchase of Townsend's "Power Bounce" shoe and

---

[7] Because the Court determined that transfer to the Western District of Washington was proper under Sections 1400(b) and 1406(a), it declined to consider Brooks Sports' alternative request for Section 1404(a) transfer. *Id.* at 5 n.6.

(2) Brooks Sports' "effort to 'patent around' the '416 patent[.]" Dkt. No. 72 at 2–3. The second sought an order compelling Brooks Sports to "prepare, designate, and produce" its Rule 30(b)(6) witness along with "documents responsive to the accompanying Rule 34 request[.]" Dkt. No. 79 at 2. Townsend also moved the Court for a protective order permitting an advisor to review Brooks Sports' highly sensitive documents. Dkt. No. 78 at 1–2. Brooks Sports responded by moving the Court to enter this district's model ESI order. Dkt. No. 87. According to Brooks Sports, Townsend had "retreat[ed]" from the parties' agreement—memorialized in the October 2017 JSR—to adopt the model ESI order. *See id.* at 4 (arguing that Townsend wanted to add "numerous burdensome provisions that conflict with the text and spirit of the [model order]," and that his late change of mind "has been costly and burdensome to Brooks, resulting in unnecessary motion practice"). Brooks Sports simultaneously moved for an order postponing the Rule 30(b)(6) deposition until after the Court resolved the parties' competing proposals for ESI disclosure. Dkt. No. 89 at 4. And last, Townsend requested an order to show cause why Nathan Vaikun, an ex-Brooks Sports employee, should not be held in contempt for failing to obey a deposition subpoena. Dkt. No. 90 at 2–3; *see* Fed. R. Civ. P. 45(g).

The Court did not rule on any of these discovery motions. Instead, it granted Brooks Sports' motion to stay the case and ordered the parties to file a joint status report within 14 days of (1) the PTAB's decision to grant or deny *inter partes* review and (2) the PTAB's final decision as to the validity of the '416 Patent. Dkt. No. 101 at 1. The Court also removed all pending motions from its calendar pending possible reinstatement once the stay was lifted. *Id.*

F.    *Inter Partes* **Review and Voluntary Dismissal**

The PTAB instituted *inter partes* review of claims 1 and 6 of the '416 Patent in August 2018. Dkt. No. 104 at 2; *see* Dkt. No. 104-1 (decision to institute *inter partes* review). And, one year later, it issued its final decision finding claims 1 and 6 unpatentable. Dkt. No. 106 at 2; *see*

Dkt. No. 106-1 (final written decision); Dkt. No. 128-10 at 2–3 (*inter partes* review certificate cancelling claims 1 and 6 of the '416 Patent). Townsend timely petitioned the PTAB for a rehearing. Dkt. No. 108 at 1–2. He sought to modify the PTAB's final decision to (1) reject two of Brooks Sports' challenges to claims 1 and 6 that the PTAB previously declined to reach; (2) disregard the testimony of Brooks Sports' expert; and (3) provide a ruling and grounds for denying Townsend's request to disregard the testimony of Brooks Sports' expert. Dkt. No. 130-8 at 4. In May 2021,[8] the PTAB granted in part the rehearing request and modified its final decision to expressly reject the two previously unaddressed challenges to claims 1 and 6. Dkt. No. 130-8 at 11. But it denied Townsend's request to wholesale disregard the testimony of Brooks Sports' expert and provided an explanation for that decision. *Id.* at 12.

Townsend appealed to the Federal Circuit, which summarily affirmed the PTAB's final decision in June 2022. Dkt. No. 112 at 2; Dkt. No. 115 at 2; *see* Dkt. No. 128-9 at 2–3 (Rule 36 summary affirmance). The parties then returned to this Court and agreed to lift the stay. Dkt. No. 117 at 2; Dkt. No. 118 at 1 (order lifting stay). In their February 2023 Joint Status Report, the parties evinced a disagreement over "the particular form of judgment and/or dismissal and proposal(s) regarding attorney's fees and costs[.]" Dkt. No. 119 at 3. This was Brooks Sports' first mention of attorney fees (and its first assertion that this case is exceptional) since its amended answer. *See* Dkt. No. 26 at 10. Despite their initial impasse, the parties soon stipulated to dismissal of Townsend's infringement action with prejudice and Brooks Sports' counterclaims without prejudice. Dkt. No. 121 at 2. They also asked the Court to retain jurisdiction following entry of the

---

[8] According to the parties' July 2020 Joint Status Report, the '416 Patent *inter partes* proceedings were one of nine such proceedings held in administrative abeyance by the PTAB pending the Supreme Court's resolution of the certiorari petition in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019). Dkt. No. 110 at 2; *see also United States v. Arthrex, Inc.*, 594 U.S. 1 (2021). This appears to be responsible for the PTAB's delay in adjudicating Townsend's rehearing request.

stipulation for the limited purpose of deciding any motion for costs and fees. *Id.* The Court agreed

to do so. Dkt No. 122.

Brooks Sports' motion for attorney fees followed. Dkt. No. 127.[9]

## II.      DISCUSSION

The Court begins with the applicable legal standard. It then explains why, considering the

totality of the circumstances, this case is not exceptional.

### A.    Legal Standard

The Patent Act vests district courts with discretion to award the prevailing party reasonable

attorney fees in "exceptional cases." 35 U.S.C. § 285.[10] "[A]n 'exceptional case' is simply one that

stands out from others with respect to the substantive strength of a party's litigating position

(considering both the governing law and the facts of the case) or the unreasonable manner in which

the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554

(2014). Such cases are "rare." *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1303 (Fed. Cir. 2018).

And while litigation involving "subjective bad faith or exceptionally meritless claims may

sufficiently set itself apart from mine-run cases to warrant a fee award," there is no precise rule or

formula governing the exceptionality inquiry. *Octane Fitness, LLC*, 572 U.S. at 554–55. The test

is "inherently flexible," and district courts must "determine whether a case is 'exceptional' in the

case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 554.

Some factors that might guide the district court's decision include frivolousness, motivation, the

---

[9] Brooks Sports separately moved for taxation of costs in the amount of $1,175.79. Dkt. No. 125. Following referral of the motion, the Clerk of Court taxed these costs against Townsend. Dkt. No. 137; *see* April 6, 2023 Docket Entry (referring motion to Clerk of Court).

[10] Townsend does not dispute that Brooks Sports is the "prevailing party" for purposes of fees. Nor could he. Because this case ended with an agreed dismissal of Townsend's patent infringement claim with prejudice, Brooks Sports successfully rebuffed his lawsuit and ensured that he can never again assert the same patents against Brooks Sports' same accused products. *See United Cannabis Corp. v. Pure Hemp Collective Inc.*, 66 F.4th 1362, 1368 (Fed. Cir. 2023).

1   objective unreasonableness of a case's factual or legal components, and the need to advance

2   considerations of compensation and deterrence. *Id.* at 554 n.6; *see also Univ. of Utah v. Max-*

3   *Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317, 1322–23 (Fed. Cir.

4   2017) (these factors are suggestions).

5          District courts thus retain "considerable latitude" in making a Section 285 exceptionality

6   determination. *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1358 (Fed. Cir. 2017). And even

7   when a case qualifies as exceptional, an award of fees is not automatic; rather, the district court

8   may "weigh intangible as well as tangible factors: the degree of culpability of the infringer, the

9   closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve

10  as an instrument of justice." *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1197 (Fed.

11  Cir. 1996); *see also Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990) (an

12  exceptional case does not always require a fee award). The moving party must show that it is

13  entitled to fees by a preponderance of the evidence. *Octane Fitness*, 572 U.S. at 557–58.

14  **B.     The Substantive Strength of Townsend's Litigating Position**

15         Brooks Sports contends that this case is exceptional because (1) Townsend failed to

16  conduct an adequate pre-suit investigation and (2) claim 1 of the '416 Patent was "manifestly

17  weak." Dkt. No. 127 at 12–14. The Court addresses these arguments in turn.

18         1.   Pre-Suit Investigation

19         According to Brooks Sports, Townsend's pre-suit investigation was deficient because he

20  relied on advertisements and marketing materials and never tested the accused shoes. *Id.* at 12–13.

21  Brooks Sports maintains that Townsend should have obtained and tested the accused shoes because

22  "[t]hey are available to the public and not prohibitively costly." *Id.* at 13. It also points to the

23  testimony of Townsend's technical expert, who indicated that materials can be viscoelastic but not

24  dilatant, and that rheology testing will reveal whether a given material is a dilatant. *Id.* ("Had

1    Townsend conducted a test like the one his expert describes on the accused shoe, [he] could have

2    learned that the material is not dilatant and that the Brooks shoe does not infringe.").

3         Pre-suit diligence is a factor in the totality-of-the-circumstances analysis. *Bayer*

4    *CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1307 (Fed. Cir. 2017). And a patentee-

5    plaintiff's failure to conduct an adequate pre-suit investigation into the alleged infringement can

6    support an exceptionality finding. *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1356 (Fed.

7    Cir. 2019); *see, e.g.*, *WPEM, LLC v. SOTI Inc.*, 837 F. App'x 773, 774–75 (Fed. Cir. 2020) (district

8    court did not abuse its discretion in finding case exceptional because "a reasonable plaintiff

9    conducting a minimally diligent infringement analysis" would have read the allegedly infringing

10   manual and seen a reference to previous versions of the accused technology, which "would have

11   tipped off a reasonable plaintiff to evaluate whether the product accused of infringement predates,

12   and therefore potentially anticipates, the asserted patent claims"); *Blackbird Tech LLC v. Health*

13   *In Motion LLC*, 944 F.3d 910, 916 (Fed. Cir. 2019) (affirming exceptionality finding when "the

14   exercise of even a modicum of due diligence" by the patentee during its pre-suit investigation

15   "would have revealed the weaknesses in its litigation position").

16        "[T]he key factor in determining whether a patentee performed a reasonable pre-filing

17   inquiry is the presence of an infringement analysis." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360

18   F.3d 1295, 1302 (Fed. Cir. 2004); *cf. View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981,

19   986 (Fed. Cir. 2000) (in Rule 11 context, a patentee must "at a bare minimum" apply the claims

20   of the asserted patent to the accused device and "conclude that there is a reasonable basis for a

21   finding of infringement of at least one claim"). An infringement analysis "can simply consist of a

22   good faith, informed comparison of the claims of a patent against the accused subject matter." *Q-*

23   *Pharma*, 360 F.3d at 1302. The Court finds that Townsend conducted an adequate pre-suit

24   investigation because his patent counsel performed an infringement analysis. Counsel's detailed

exchanges with Brooks Sports' corporate and outside attorneys (recounted above) evince a "good faith, informed" comparison of claim 1 of the '416 Patent with the '885 Patent and allegedly infringing Brooks DNA cushion material. *See* Dkt. Nos. 130-1–130-5.

Although counsel's analysis failed to carry the day before the PTAB and ultimately may have been flawed or incorrect, that is not the standard for awarding fees under the Patent Act. *See Spineology, Inc. v. Wright Med. Tech., Inc.*, 910 F.3d 1227, 1229–30 (Fed. Cir. 2018) (a party's position need not ultimately be correct for the case not to stand out because a strong or correct litigating position is not the standard for assessing exceptionality); *Doggyphone LLC v. Tomofun, LLC*, No. 2:19-CV-1901-BJR, 2023 WL 4743708, at *2–3 (W.D. Wash. Jul. 25, 2023) (vigorously litigating an ultimately unavailing position, standing alone, is not enough to justify fees; there must be "some other element" that pushes the losing party's case "over the line from merely weak to 'exceptionally unreasonable'"). The Supreme Court has cautioned that a Section 285 fee award is not to be used as a penalty for failure to win a patent infringement suit. *Octane Fitness*, 572 U.S. at 548. Rather, the dispositive question is whether Townsend's litigating position was reasonable. *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1380 (Fed. Cir. 2020) (that patent was ultimately held unpatentable "does not alone translate to finding [patentee's] defense of the patent unreasonable"). The Court concludes that it was. In other words, Townsend's position with respect to claim 1 of the '416 Patent "w[as] not so lacking in merit that [its] assertion could be considered vexatious." *Ironburg Inventions Ltd. v. Valve Corp.*, No. C17-1182-TSZ, 2021 WL 4426702, at *3 (W.D. Wash. Sept. 27, 2021).

Nor does Townsend's failure to obtain and test the accused Brooks DNA material automatically render this case exceptional. First, Brooks Sports' argument presupposes that Brooks DNA is "not dilatant" within the meaning of claim 1, that Brooks DNA is among those materials that are viscoelastic but not dilatant, and that materials that are "not dilatant" cannot constitute

"material consisting essentially of a dilatant compound." As Townsend points out, "[w]hether Brooks' DNA is the claimed 'dilatant compound' is determined by comparing Brooks' DNA to the proper construction of that claim term." Dkt. No. 129 at 13 (citing *CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289 (Fed. Cir. 2021)). Indeed, Brooks Sports argued that the broadest reasonable construction of "material consisting essentially of a dilatant compound" would "include materials whose 'formulation contains substances that are not dilatant so long as those other substances do not render the material non-dilatant as a whole,'" such that "Silly Putty, Dow Dilatant Compound No. 3179, and other materials containing additives" could qualify "so long as those materials have dilatant properties." *Brooks Sports, Inc. v. Townsend*, No. IPR2018-00577, 2019 WL 3719791, at *8 (P.T.A.B. Aug. 7, 2019).[11] And, after having characterized Brooks DNA as a non-Newtonian fluid akin to a mixture of cornstarch and water, *see* Dkt. No. 130-3 at 5 (citing https://www.youtube.com/watch?v=CTqB1M1pfOw), Brooks Sports also argued that one of ordinary skill in the art would have recognized that prior art describes a "dilatant compound" where such prior art teaches "that variable viscosity fluid 12 can include shear stiffening material and that an 'example of such shear stiffening material is a composition of cornstarch and water[.]'" *Brooks Sports, Inc.*, 2019 WL 3719791, at *28. The arguments and uncertainty regarding the breadth of material potentially encompassed by claim 1 at the inception of this dispute demonstrate that pre-suit investigational testing would not necessarily have been the end-all be-all that Brooks Sports suggests. And to the extent the foregoing analysis could benefit from a deeper dive into the

---

[11] Experts have characterized Silly Putty as viscoelastic, *see, e.g.*, *Reckitt Benckiser Pharms. Inc. v. Teva Pharms. USA, Inc.*, No. CV 14-1451-RGA, 2016 WL 3621632, at *3 (D. Del. June 29, 2016), and here the PTAB determined that Silly Putty is encompassed within the meaning of "dilatant compound" in claim 1, *Brooks Sports*, 2019 WL 3719791, at *7. For his part, Townsend argued that that the broadest reasonable construction of "material consisting essentially of a dilatant compound" would encompass "a dilatant compound and other material compounds and additives that do not significantly diminish the energy storage and return of the dilatant compound at high rates of loading and/or high strain rates." *Id.* at *8.

merits, it simply underscores why, as discussed in Section II.B.3 below, it is "unusual" to base a motion for fees on issues that were "neither fully adjudicated nor even fully litigated" before this Court or the PTAB, *Thermolife*, 922 F.3d at 1357, and why a district court has discretion to refuse the burden of "conduct[ing] the trial it never had by . . . evaluat[ing]," on a motion for attorney's fees, whether a defendant's product infringes claims that have been invalidated by the PTAB, *Spineology*, 910 F.3d at 1230.

Second, whether testing is necessary for a responsible accusation of infringement turns on the availability of the accused products, the existence and cost of testing, and whether other sufficiently reliable information exists. *Thermolife*, 922 F.3d at 1360; *see, e.g.*, *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007) (patentee was not required to obtain and dissect the metal casing surrounding the magnets in defendant's brake system; patentee performed a reasonable investigation by analyzing the patent's validity, determining the scope of the patent's claims, performing an infringement analysis, reviewing publicly available documents on the accused brake system, taking photos of the brakes, and reviewing the brakes with experts). As noted above, Brooks Sports suggests that Townsend could have easily obtained a pair of its shoes and conducted rheology testing, which would have shown that Brooks DNA is not a dilatant. The Court agrees that Brooks DNA was readily available for purchase at a reasonable price. And it assumes for purposes of this motion that the cost of rheology testing is not infeasible. That does not, however, mean that it was unreasonable for Townsend to rely on other information—i.e., Brooks DNA advertising and marketing materials—to support his infringement allegations. Product advertising "may supply, or help supply, a reliable basis for a patent owner to allege infringement." *Thermolife*, 922 F.3d at 1361. The nature and setting of those assertions affect their reliability for that purpose. *Id.* Here, early disputes between the parties over the construction of "dilatant compound," Dkt. Nos. 130-1–130-5, suggest that it was not unreasonable for Townsend

to rely on advertisements rather than testing, *see* Dkt. No. 130-3 at 5 (describing Brooks Sports' advertisement as "completely consistent with the Brooks patent description," and citing to a separate advertisement in which Brooks Sports likens Brooks DNA to a mixture of cornstarch and water). Brooks Sports appears to dismiss Townsend's reliance on marketing materials as ill-founded because his complaint does not identify specific advertisements with sufficient particularity. *See* Dkt. No. 127 at 12 ("His complaint refers to unidentified[] marketing from Brooks."). But it does not otherwise explain why its advertisements are unreliable. Moreover, this assertion overlooks counsel's pre-suit communication identifying specific advertisements and statements about Brooks DNA that allegedly "describe the same response to different loading" as the "dilatant compound" identified in the '416 Patent. Dkt. No. 130-3 at 5; *compare id.* at 3–5, *with Brooks Sports*, 2019 WL 3719791, at *7 ("[W]e interpret 'dilatant compound' to mean 'a polymeric material that changes from soft and pliable under slow application of a load to elastic and bouncy under rapid application of a load.'").

Even assuming that Townsend could have strengthened his pre-suit investigation by testing the Brooks DNA material, though, that is not the relevant inquiry. *See Q-Pharma*, 360 F.3d at 1302 (although patentee could have conducted a more thorough pre-suit investigation by conducting a chemical analysis of the accused lotion, its pre-filing infringement analysis was supported by a sufficient evidentiary basis). Townsend's infringement allegation was supported by a sufficient evidentiary basis because, as discussed above, his counsel conducted a good faith infringement analysis and reviewed several Brooks DNA advertisements that touted impact responses and behavior materially identical to that of the "material consisting essentially of a dilatant compound" protected by the '416 Patent. In short, this is not a case in which the patentee relied exclusively on plainly deficient alternatives to testing. *Compare id.* (patentee obtained a sample of the accused lotion and "reviewed its advertising and labeling, which listed the product's

ingredients and repeatedly touted the therapeutic effects of" the patented chemical combination), *with Thermolife*, 922 F.3d at 1360–61 (product labels at issue either "made clear" that the accused products did not contain the requisite amount of certain chemicals to infringe on the patented composition or made no mention of the chemicals at all; patentee relied exclusively on the product labels in alleging infringement even though a "simple test on easily acquired products was available to resolve the issue").

Indeed, at least one judge in this district has denied fees when the patentee's pre-suit investigation was far more cursory and ill-informed than Townsend's. *See Mobiloc, LLC v. Neutron Holdings, Inc.*, No. 2:20-CV-1570-BJR, 2022 WL 874738, at *3 (W.D. Wash. Mar. 24, 2022) (concluding that case did not stand out as "exceptionally weak" and denying fees even though plaintiff (1) filed suit "without knowing the actual location of the GPS chip in the accused e-bike," (2) could have determined the location of the GPS chip before filing suit by accessing public records, (3) "plainly erred" by alleging direct infringement of its patent, and (4) advanced allegations that were "speculative and not well-supported").

### 2. Strength of Claim 1

Brooks Sports next contends that this case is exceptional because claim 1 of the '416 Patent was "manifestly weak." Dkt. No. 127 at 14 ("Asserting a patent of weak validity is [a] consideration in awarding attorney's fees."). It notes that the PTAB "found all challenged claims invalid on more than one ground," and highlights the Federal Circuit's summary affirmance of the PTAB's final decision. There are three flaws in this reasoning.

First, Brooks Sports' argument is a variation on the long rejected "losing party pays" theory. The Court reiterates that it is the reasonableness of the losing party's argument that informs the exceptionality inquiry—not whether that party's position was "weak" or ultimately disproved. *Munchkin*, 960 F.3d at 1379; *see also Doggyphone*, 2023 WL 4743708, at *3 (the "mere weakness"

of the losing party's argument is not grounds for statutory fees). Second, Brooks Sports' suggestion that it won a landslide victory before the PTAB misrepresents the *inter partes* review proceedings. It is true that the PTAB found claim 1 unpatentable. Brooks Sports, however, advanced five challenges to claim 1, only two of which prevailed—i.e., three were rejected. *See* Dkt. No. 130-8 at 3–4 (decision on petition for rehearing summarizing Brooks Sports' challenges to claims 1 and 6 and the PTAB's final decision as to those challenges); Dkt. No. 129 at 9, 14. And third, the Federal Circuit has repeatedly rejected the notion that a Rule 36 summary affirmance is reflective of the merits of a party's case. *See Innovation Scis., LLC v. Amazon.com, Inc.*, 842 F. App'x 555, 558 (Fed. Cir. 2021) ("[N]othing in the rule or in our precedent suggests that a summary affirmance under Rule 36 is an indication that a case was meritless, frivolous, or even weak.").

   3. <u>Other Considerations</u>

   Again, the Federal Circuit has repeatedly cautioned that it is "unusual"—although not necessarily improper—for a district court to rest its exceptionality determination on an examination of issues that were not fully litigated before the court. *Munchkin*, 960 F.3d at 1378. That is why district courts "have wide latitude 'to *refuse* to add to the burdens of litigation by opening up issues that have not been litigated but are asserted as bases for a fee award.'" *Id.* (quoting *Thermolife*, 922 F.3d at 1357). Here, the PTAB handled all issues related to the validity of the '416 Patent and, by extension, the merits of Townsend's infringement claim. Those issues are now before the Court for the first time in the context of a fee motion. The Court declines to make the "detailed, fact-based analysis" required when a fee award is premised on issues that were not fully litigated before it. *Id.*; *see also Thermolife*, 922 F.3d at 1357 ("[M]ore process may well be needed on a fees motion when the issue presented as a basis for fees has not previously been litigated.").

In sum, the substantive strength of Townsend's litigating position does not weigh in favor of finding this case exceptional.

**C.      The Manner in Which Townsend Litigated this Case**

Brooks Sports also argues that Townsend litigated this case in an unreasonable manner and drove up litigation costs by (1) opposing Brooks Sports' transfer motion and (2) failing to abide by agreements with opposing counsel. Dkt. No. 127 at 14. The Court addresses these points in turn. First, however, it sets forth the standard for assessing whether unreasonable litigation conduct renders a case exceptional.

1.      Legal Standard

A case may be exceptional based on unreasonable and vexatious litigation tactics even when the legal theories advanced were not objectively baseless. *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015). Sanctionable conduct is not the benchmark; rather, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness*, 572 U.S. at 555. The inquiry remains the same regardless of whether the conduct at issue is a "single, isolated act" or a pervasive pattern of abusive tactics: "The district court must determine whether the conduct . . . is such that when considered as part of and along with the totality of the circumstances, the case is exceptional[.]" *Intellectual Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1384 (Fed. Cir. 2019). A fee award therefore requires the district court to find the entire case—not a portion of the case—exceptional. *Id.*

2.      Transfer Motion

Brooks Sports maintains that Townsend's opposition to the motion to transfer venue was "objectively unreasonable" and "unnecessarily . . . increased Brooks' costs to obtain transfer." Dkt. No. 127 at 14. It argues that the Supreme Court's decision in *TC Heartland*, which issued

before Brooks Sports filed its motion to transfer, "eliminated" any doubt that venue was improper in the Middle District of Florida because that case "confirmed that 'residence' in 28 U.S.C. § 1400(b) means only the state of incorporation[.]" *Id.* The Court does not agree that Townsend's resistance to transfer was objectively unreasonable. And even if it was, that conduct alone would not render this case exceptional.

The Federal Circuit's decision in *VE Holding* was still good law when Townsend filed his complaint in the Middle District of Florida in February 2017. At that time, venue was proper if the defendant corporation was subject to personal jurisdiction in the district of suit. *VE Holding*, 917 F.2d at 1584. Brooks Sports correctly observes that *TC Heartland* abrogated *VE Holding* by reaffirming that a corporate defendant "resides" only in the state of incorporation for purposes of the patent venue statute. 581 U.S. at 270. And it is true that the Supreme Court issued *TC Heartland* before Brooks Sports moved to transfer venue. But Brooks Sports' focus on the residency test under Section 1400(b) overlooks the second statutory basis for venue. As the Florida district court observed, *TC Heartland* "did not address" Section 1400(b)'s second prong, and venue "could still be proper under the venue statute[] where a defendant has 'committed acts of infringement' and has 'a regular and established place of business.'" Dkt. No. 54 at 3 (quoting 28 U.S.C. § 1400(b)).

Indeed, this second prong was the basis of Townsend's continued resistance to transfer. Townsend argued (albeit unconvincingly) that Brooks Sports' "admissions and statements . . . establish[ed] a *prima facie* showing that [it] has a permanent and continuous presence in th[e Middle District of Florida] and therefore has a 'regular and established place of business' [there]." Dkt. No. 40 at 5; s*ee In re Cordis Corp.*, 769 F.2d at 737 ("[T]he appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there and not as Cordis argues, whether it has a fixed physical presence in the sense of a formal office or store."). Townsend urged the Court to follow *Raytheon Company*

*v. Cray, Inc.*, 258 F. Supp. 3d 781 (E.D. Tex. 2017), *vacated by In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017),[12] to determine whether Brooks Sports had a "permanent and continuous presence" in the Middle District of Florida. Dkt. No. 40 at 8. The Court declined do so in light of the then-pending writ of mandamus in *Cray* and because, in the Court's view, it was "clear" from the record that Brooks Sports does not have a regular and established place of business in the Middle District of Florida. Dkt. No. 54 at 4 & n.5.

The Court cannot say that it was objectively unreasonable or frivolous for Townsend to advance the arguments that he did. True enough, his belated motion to conduct venue-related discovery and supplement his opposition brief when the motion to transfer was ripe prolonged the issue and caused Brooks Sports to incur costs that it would not have otherwise had to shoulder. *See* Dkt. No. 41 (motion to conduct limited discovery); Dkt. No. 43 (opposition to motion for limited discovery). And the Magistrate Judge ultimately rejected Townsend's proffered basis for additional discovery. Dkt. No. 47.[13] But this garden-variety venue disagreement—and Townsend's slight prolonging of the issue—does not strike the Court as exceptional or stand out from run-of-the-mill litigation conduct.

Townsend's actions are, in short, a far cry from the type of vexatious or facially frivolous behavior that might sustain an exceptionality finding. *See, e.g.*, *Blackbird Tech*, 944 F.3d at 916–17 (patentee made multiple settlement demands for far less than the anticipated cost of defense, unreasonably delayed production of documents, improperly withheld many documents, and waited

---

[12] The Federal Circuit vacated the district court's *Cray* decision in September 2017, after Brooks Sports' motion to transfer venue was granted.

[13] Brooks Sports emphasizes the Magistrate Judge's statement that Townsend "provide[d] no basis for the Court to conclude that [Brooks Sports'] 'contacts' with [the Middle District of Florida] are something that the Court must specifically consider in determining proper venue[.]" *Id.* at 6; *see* Dkt. No. 127 at 14. To the extent the Magistrate Judge found that Brooks Sports' contacts with the district were irrelevant to determining whether it had a current and continuous presence there, the Court respectfully disagrees.

to file a notice of dismissal until the deadline for pretrial submissions and shortly before defendant's motion for summary judgment was to be decided); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1367, 1369 (Fed. Cir. 2013) (during decade-long litigation, patentee engaged in "rampant misconduct," sued the accused infringer's customers only to withdraw its claims after substantial litigation, misrepresented the date of key evidence, and tried to mask false testimony through motion practice); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920 (Fed. Cir. 2012) (patentee misrepresented the law of claim construction and the constructions adopted by the court and introduced and relied on expert testimony that failed to meet minimal standards of reliability, thereby prolonging litigation and attendant expenses); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324–25 (Fed. Cir. 2011) (patentee destroyed relevant documents, lodged incomplete and misleading extrinsic evidence, and acted in bad faith by exploiting the high cost of defending the case to extract a nuisance value settlement).

Even assuming for the sake of argument that Townsend's opposition to transfer was objectively unreasonable or that it unreasonably prolonged litigation and "drove up" costs for Brooks Sports, this, standing alone, would not support an exceptionality finding. As noted above, although a district court can find a case exceptional "based on a single, isolated act," that act must in the totality of the circumstances render the entire case exceptional. *Intellectual Ventures*, 944 F.3d at 1384. The Court cannot say that Townsend's resistance, even if unnecessary or unfounded, "so severely affected every stage of the litigation" such that fees are proper. *Blackbird Tech*, 944 F.3d at 919 (quoting *Monolithic Power*, 726 F.3d at 1369).

3. Alleged Failure to Abide by Agreements with Opposing Counsel

Brooks Sports points to two alleged "agreements" that Townsend failed to honor. It claims that Townsend (1) backed out of the parties' agreement to enter this district's model ESI Order and (2) sought to hold Mr. Vaikun in contempt for failing to obey a deposition subpoena even

though the parties agreed that he would be deposed whenever he was "next otherwise planning to be in the U.S." Dkt. No. 127 at 9–10, 15. Neither argument is availing.

With respect to the first, the record does not support Brooks Sports' assertion that the parties unconditionally agreed to adopt the model ESI Order. Brooks Sports cites to the parties' October 2017 JSR as the formal memorialization of that agreement, but nowhere in that document did Townsend agree to entry of the model ESI Order without modification. The JSR instead indicates that the parties had "agree[d] to adopt the ESI Agreement based on this District's ESI Model Agreement, *as modified by the parties*, and to preserve and produce ESI pursuant to that Agreement." Dkt. No. 67 at 3 (emphasis added). Brooks Sports does not address that second clause. And yet, it blames Townsend for subsequently seeking to "substantially change" the terms of the model ESI Order and "add[] provisions that would uniquely and significantly burden Brooks." Dkt. No. 127 at 9. Such changes, however, are precisely what the October 2017 JSR contemplates. Nor does the ensuing "cascading impact on discovery" supply exceptional circumstances. *Id.* Brooks Sports essentially complains that Townsend's proposed discovery procedures forced it to file a competing motion and move for a protective order. *Id.* This is not out of the norm for litigation; rather, it is yet another example of a garden-variety discovery dispute. *See Doggyphone LLC*, 2023 WL 4743708, at *3 (the winning party must do more than point to "relatively bland instances of discovery gamesmanship" or "discretionary decisions . . . that in retrospect did not serve [the opposing party']s case as well as hoped").

Brooks Sports' argument related to Mr. Vaikun's deposition fails on similar grounds. Its counsel apparently agreed to accept service of Mr. Vaikun's deposition subpoena "on the condition that Mr. Vaikun would be made available for a deposition when he was next otherwise planning to be in the U.S." Dkt. No. 127 at 10. According to Brooks Sports, though, Townsend's counsel subsequently "reneged" on this agreement and indicated that he "would prepare and/or file a

motion to put pressure on Mr. Vaikun." *Id.* ("Plaintiff then sought an Order to Show Cause why Mr. Vaikun should not be held in contempt."). The Court has reviewed the relevant communications. *See* Dkt. No. 128-13. Although it does not condone "hardball" gamesmanship, this appears to be closer to a "relatively bland" discovery squabble. *Doggyphone LLC*, 2023 WL 4743708, at *3. It is certainly not the kind of misconduct that renders the entire case exceptional. *See Intellectual Ventures*, 944 F.3d at 1384.[14]

The manner in which Townsend litigated this case does not weigh in favor of an exceptionality finding.[15]

**D.      Surreply/Motion to Strike**

Townsend filed a surreply asking the Court to strike portions of Brooks Sports' reply brief and two supporting exhibits attached to the Second Declaration of Darren Donnelly. Dkt. No. 136 at 3; *see* Dkt. Nos. 134-1–134-2 (exhibits at issue). He claims that these materials raise new arguments related to the reasonableness of Brooks Sports' attorney fees. Dkt. No. 136 at 2–3. Because this case is not exceptional, however, the Court need not determine reasonable hours and rates for a fee award. It therefore declines to strike the targeted materials.

---

[14] Additionally, the Court never ruled on or otherwise passed on the merits of Townsend's motions to compel, his motion for an order to show cause, either party's motion for a protective order, or Brooks Sports' motion for entry of the model ESI Order.

[15] Brooks Sports appears to suggest that improper motive can be inferred from the fact that a third party financed Townsend's litigation. Dkt. No. 127 at 7. The Court again disagrees. A party that has been issued a valid patent is entitled to a presumption of good faith in asserting its patent rights against an alleged infringer. *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018). And "[t]hat a separate entity may have paid some or all of [Plaintiff]'s litigation expenses, without more, in insufficient to find bad faith." *Corus Realty Holdings, Inc. v. Zillow Grp., Inc.*, No. C18-0847-JLR, 2020 WL 4041108, at *5 (W.D. Wash. Jul. 17, 2020).

### III.  CONCLUSION

The Court DENIES Brooks Sports' motion for attorney fees. Dkt. No. 127. The Clerk is directed to close this case.

Dated this 31st day of March, 2024.

Lauren King
United States District Judge